Joseph A. Boyle (JB 5036)
Lauri A. Mazzuchetti (LM 8035)
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, NJ 07054
(973) 503-5900
(973) 503-5950 (fax)
Attorneys for Plaintiffs
XO Communications, LLC and
XO Communications Services, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| XO COMMUNICATIONS, LLC, A Delaware limited liability company, and XO COMMUNICATIONS SERVICES, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>VERIZON NEW JERSEY INC., a New Jersey corporation, VERIZON PENNSYLVANIA INC., a Pennsylvania corporation, VERIZON MARYLAND INC., a Maryland corporation, and VERIZON DC INC., a New York corporation<br><br>    Defendants. | CIVIL ACTION NO.<br><br>**COMPLAINT** |

Plaintiffs XO Communications, LLC, on behalf of itself and its predecessors-in-interest (collectively "XO LLC"), and XO Communications

Services, Inc., on behalf of itself and its predecessors-in-interest (collectively "XOCS") (XO LLC and XOCS are collectively referred to herein as "XO"), by and through their attorneys, Kelley Drye & Warren LLP, for their Complaint (the "Complaint") against defendants Verizon New Jersey Inc. ("Verizon-NJ"), a New Jersey corporation, Verizon Pennsylvania Inc. ("Verizon-PA"), a Pennsylvania corporation, Verizon Maryland Inc. ("Verizon-MD"), a Maryland corporation, and Verizon Washington, D.C. Inc. ("Verizon-DC"), a New York corporation (collectively "Verizon"), allege as follows:

## THE PARTIES

1. XO LLC is a Delaware limited liability company and has its principal place of business at 11111 Sunset Hills Road, Reston, VA 20190.

2. XOCS, a wholly owned subsidiary of XO LLC, is a Delaware corporation and has its principal place of business at 11111 Sunset Hills Road, Reston, VA 20190.

3. Upon information and belief, Verizon-NJ is a corporation organized under the laws of the State of New Jersey with its principal place of business located in Newark, New Jersey. Verizon-NJ provides telecommunications services within the State of New Jersey and is the "incumbent local exchange carrier" within its operating territory as that term is defined by § 251(h) of the Communications Act of 1934, as amended by the

Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996) (codified at 47 U.S.C. § 151, *et seq.*) (the "Act").

4. Upon information and belief, Verizon-PA is a Pennsylvania corporation with its principal place of business located in Philadelphia, Pennsylvania. Verizon-PA provides telecommunications services within the Commonwealth of Pennsylvania and is the "incumbent local exchange carrier" within its operating territory as that term is defined by § 251(h) of the Act.

5. Upon information and belief, Verizon-MD is a Maryland corporation, with is principal place of business located in Baltimore, Maryland. Verizon-MD provides telecommunications services within the State of Maryland and is the "incumbent local exchange carrier" within its operating territory as that term is defined by § 251(h) of the Act.

6. Upon information and belief, Verizon-DC is a New York corporation with its principal place of business in Washington, D.C. Verizon-DC provides telecommunications services within Washington, D.C. and is the "incumbent local exchange carrier" as that term is defined by § 251(h) of the Act.

7. Verizon-NJ, Verizon-PA, Verizon-DC and Verizon-MD are each wholly owned subsidiaries of Verizon Communications, Inc. Verizon Communications, Inc., and its wholly-owned subsidiaries (including Verizon-NJ,

Verizon-PA, Verizon-DC and Verizon-MD), operate as a single integrated operation, under a nationwide brand. As such, and upon information and belief, the decisions relating to the execution and administration of the contracts at issue in this Complaint were and are directed by Verizon Communications, Inc. from its New Jersey headquarters.

8. Verizon-NJ, Verizon-PA, Verizon-DC and Verizon-MD are collectively referred to in this Complaint as "Verizon."

### JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because XO asserts a claim under the Act and related regulations promulgated by the Federal Communications Commission (the "FCC").

11. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because upon information and belief, Verizon engaged in actions within this judicial district to operate their businesses and substantial events giving rise to XO's claims occurred within this judicial district. In the alternative, and in the event that XO is unable to satisfy the requirements of 28 U.S.C. § 1391(a)(2), venue is proper in this Court pursuant to 28 U.S.C. §

1391(a)(3) because at least one defendant, Verizon-NJ, is located in this judicial district.

## BACKGROUND

12. XO is a leading competitive provider of telecommunications services throughout the United States. XO provides circuit-switched local exchange service, domestic and international long distance services, toll-free service, private lines, data service, and information services to its customers located in markets throughout the United States, including in New Jersey, Pennsylvania, Maryland and Washington, D.C.

13. XOCS is a "telecommunications carrier" and a "local exchange carrier" as those terms are defined under Section 3 of the Communications Act of 1934, as amended by the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996) (codified at 47 U.S.C. § 151, *et seq.*) (the "Act").

14. The Act was amended in 1996 to open local telephone markets to competition and to end the historical regime in which incumbent local telephone companies ("ILECs), like Verizon, enjoyed *de facto* or *de jure* monopolies.

15. The Act imposes specific obligations on ILECs, such as Verizon, intended to open the local exchange markets to competitive local exchange carriers ("CLECs"), such as XO.

16. Among the most significant obligations is that an ILEC must, upon request, interconnect its network with the networks of a requesting CLEC for the purpose of exchanging telephone exchange traffic and exchange access traffic. *See* 47 U.S.C. § 251(c)(2).

17. In this regard, the FCC adopted a rule obligating an interconnected carrier using, but not providing, a transmission facility interconnecting two local exchange carriers (such facilities are referred to hereafter as: interconnection transmission facilities") to pay a proportionate share of the facility to the extent that it was used by the non-providing carrier to send traffic to the providing carrier for completion. *See* 47 C.F.R. § 51.709(b).

18. In addition to setting out the ILECs' substantive obligations, the Act set forth a procedural scheme to implement its pro-competitive requirements. Under this scheme, ILECs and CLECs are required to negotiate in good faith the terms of "interconnection agreements" that set forth the terms and conditions under which, among other things, the competing carriers will interconnect their network facilities, exchange traffic between their network (and compensate each other for the interconnection transmission facilities between the

networks used to exchange traffic), and compensate each other for transporting and terminating traffic that originated on the other carrier's own network.

**The Interconnection Agreements**

19. Since at least June 2000, Verizon and XO (and/or one of its predecessors-in-interest) have been parties to interconnection agreements (the "XO Interconnection Agreements") with respect to the services provided and facilities utilized in New Jersey, Pennsylvania, Maryland and Washington D.C.

20. The XO Interconnection Agreements provide, among other things, the terms and conditions under which the networks of Verizon and XO (and its predecessors-in-interest) have been and are interconnected, and under which Verizon and XO have exchanged and will exchange telecommunications traffic.

21. Verizon provides, among other services, local telephone service to retail customers in New Jersey, Pennsylvania, Maryland and Washington, D.C. using a combination of facilities owned by itself, and capacity in facilities that it obtains on a wholesale basis from other carriers and vendors, including XO pursuant to the XO Interconnection Agreements.

22. XO provides, among other things, competing local telephone service to retail customers in New Jersey, Pennsylvania, Maryland and Washington, D.C., using a combination of facilities owned by itself and capacity

and facilities that it obtains from other carriers and vendors, including Verizon pursuant to the XO Interconnection Agreements.

23. The XO Interconnection Agreements provide that, where XO supplies the interconnection transmission facility connecting the two parties' networks and used by Verizon to send traffic to XO, Verizon would pay XO for its use of the facility.

**XO Purchased The Assets of Allegiance Telecom, Inc., Including Its Accounts Receivables**

24. Pursuant to an Asset Purchase Agreement dated February 18, 2004, which was approved by order of the United States Bankruptcy Court entered on February 20, 2004, XO Communications, Inc. (the predecessor-in-interest to XO LLC) purchased substantially all of the assets of Allegiance Telecom, Inc., including its subsidiaries that were certificated local exchange companies ("Allegiance") and their respective accounts receivables and rights under any Allegiance contracts.

25. Effective April 14, 2004, XO Communications, Inc. assumed control of the Allegiance operating subsidiaries (the "Allegiance Subsidiaries").

26. The Allegiance Subsidiaries and Verizon were parties to interconnection agreements in New Jersey, Pennsylvania, Maryland and the District of Columbia (the "Allegiance Interconnection Agreements"), which set

forth terms and conditions under which the networks of Verizon and the Allegiance Subsidiaries were interconnected.

27. The Allegiance Interconnection Agreements provided that, where an Allegiance Subsidiary provided the interconnection transmission facility connecting the two parties' networks, Verizon would pay the Allegiance Subsidiary for its use of the facility.

28. By January 1, 2005, the Allegiance Subsidiaries and the certificated subsidiaries of XO Communications, Inc. in the states of New Jersey, Pennsylvania, and Maryland and the District of Columbia merged into XOCS.

29. Upon consummation of the merger, XO notified Verizon that the two entities were now one and that the facilities that were formerly part of Allegiance's network had become part of XO's network, and therefore, subsequent to the merger, XO would operate solely under the XO Interconnection Agreements in those states. These facilities were, therefore, governed going forward by the XO Interconnection Agreements.

30. Like the Allegiance Interconnection Agreements, the XO Interconnection Agreements provided that, where XO provided the interconnection transmission facility connecting the two parties' networks, Verizon would pay XO for use of the facility.

## Verizon Failed To Pay To XO Amounts Due
## Under The Allegiance Interconnection Agreements

31. Beginning in February 2005, XO contacted Verizon concerning amounts Verizon owed to XO for its proportionate share of the costs of the interconnection transmission facilities provided under the Allegiance Interconnection Agreements. Verizon was properly billed for Verizon's proportional use of these facilities in, among other states, New Jersey, Pennsylvania, Maryland and Washington, D.C.

32. Despite the fact that XO provided Verizon with invoices and a supporting spreadsheet with information regarding the interconnection transmission facilities, proportionate usage figures, and amounts owed, and despite the fact that Verizon bills XO for its proportionate use of interconnection facilities that Verizon provides and XO pays these charges, Verizon refused to pay the amounts due.

33. Verizon also failed to timely and properly dispute the invoices.

34. In addition, and despite XO's repeated requests, Verizon refused to engage in any meaningful process to amicably resolve the parties' dispute.

## Verizon Failed To Pay XO Amounts Due Under The Interconnection Agreements

35. Beginning in or about March 2005, and pursuant to the terms of the Interconnection Agreements, XO properly billed Verizon for Verizon's proportional use of certain interconnection transmission facilities established by XO and/or its predecessors-in-interest between the networks of Verizon and XO in New Jersey, Pennsylvania, Maryland and Washington, D.C.

36. In addition, beginning in or about January 2006, Verizon stopped paying XO in Maryland for Verizon's proportional use of certain legacy XO interconnection transmission facilities that XO has been billing and Verizon had been paying pursuant to the XO Interconnection Agreement since approximately November 2004.

37. Notwithstanding XO's proper and legal demand for payment, and in breach of the XO Interconnection Agreements and/or the Allegiance Interconnection Agreements (collectively referred to hereinafter as the "Interconnection Agreements"), Verizon has wrongfully refused to compensate XO for the portion of interconnection transmission facilities established by XO and/or its predecessors-in-interest between the parties' networks that Verizon uses to transport traffic to XO for termination.

38. XO has attempted to resolve this dispute informally with Verizon without success.

## COUNT ONE

### (Breach of Contract/Successor-in-Interest)

39. XO incorporates herein by reference each and every allegation contained in paragraphs 1 through 38 of the Complaint as though set forth again in full.

40. This Count is alleged either in the alternative to Count Two, or for separate relief that may be due to XO in addition to the relief sought in Count Two.

41. XOCS is the successor-in-interest to the former Allegiance Subsidiaries with respect to claims arising out of, and/or accounts receivables due and owing under, the Allegiance Interconnection Agreements.

42. XO is entitled to compensation for the interconnection transmission facilities established by XO and/or its predecessors-in-interest between the parties' networks and used by Verizon to deliver to the networks operated by the former Allegiance Subsidiaries for the purpose of transport and termination from Verizon under the Allegiance Interconnection Agreements.

43. XO billed Verizon for its use of certain interconnection transmission facilities between the networks of Verizon and XO in New Jersey, Pennsylvania, Maryland and Washington, D.C., and/or for other use of Allegiance facilities.

44. Despite XO's repeated and proper demands, Verizon has wrongfully refused, and continues to wrongfully refuse, to pay the amounts billed by and/or due to XO under the Allegiance Interconnection Agreements.

45. This refusal constitutes a breach of Verizon's obligations under the Allegiance Interconnection Agreements.

46. Verizon has also failed to timely and properly dispute the invoices sent to it by XO. This omission also constitutes a breach of the Allegiance Interconnection Agreements.

47. XO and/or their predecessors-in-interest have fully performed their respective obligations under the Allegiance Interconnection Agreements, except for those that they were prevented from performing, those they were excused from performing, or those that were waived by Verizon's conduct as alleged herein.

48. As a proximate result of Verizon's refusal to pay the amounts due under the Allegiance Interconnection Agreements, XO has suffered damages.

## COUNT TWO

## (Breach of Contract)

49. XO incorporates herein by reference each and every allegation contained in paragraphs 1 through 48 of the Complaint as though set forth again in full.

50. The Interconnection Agreements required Verizon to compensate XO for the interconnection transmission facilities established by XO and/or its predecessors-in-interest between the parties' networks and used by Verizon to deliver traffic to XO for the purposes of transport and termination.

51. In accordance with the Interconnection Agreements, XO billed and continues to bill Verizon for its proportional use of certain interconnection transmission facilities between Verizon and XO in New Jersey, Pennsylvania, Maryland and Washington, D.C.

52. Despite XO's repeated and proper demands, Verizon has wrongfully refused, and continues to wrongfully refuse, to pay the amounts billed by and due to XO under the Interconnection Agreements. This refusal constitutes a breach of Verizon's obligations under the Interconnection Agreements.

53. XO has fully performed its obligations under the Interconnection Agreements, except for those it was prevented from performing,

those it was excused from performing, or those that were waived by Verizon's conduct as alleged herein.

54. As a proximate result of Verizon's refusal to pay the amounts due to XO under the Interconnection Agreements, XO has suffered damages.

## COUNT THREE
### (Violation of the Act)

55. XO incorporates herein by reference each and every allegation contained in paragraphs 1 through 54 of the Complaint as though set forth again in full.

56. As set forth above, Sections 251 and 252 of the Act, 47 U.S.C. §§ 251 and 252, together provide for the creation and implementation of interconnection agreements, and the Interconnection Agreements are therefore creations of federal law.

57. Further, the Act requires that ILECs, such as Verizon, provide requesting telecommunications carriers interconnection with the ILEC network "on rates, terms, and conditions that are just, reasonable and nondiscriminatory." 47 U.S.C. § 251(c)(2).

58. The FCC has interpreted Section 251 of the Act to obligate an interconnected carrier, which uses the interconnection transmission facilities of the other interconnected carrier to deliver traffic to the other carrier for the

purposes of transport and termination, to pay for such facilities commensurate with its use: "[t]he rate of a carrier providing transmission facilities dedicated to the transmission of traffic between two carriers' networks shall recover only the costs of the proposition of that trunk capacity used by an interconnecting carrier to send traffic that will terminate on the providing carrier's network." 47 C.F.R. § 51.709(b). The FCC's First Report and Order in FCC Docket No. 96-98 explains further that the carrier providing the interconnection transmission facility is entitled to charge the other carrier for its use of the facility to deliver traffic to the providing carrier for purposes of transport and termination. 11 FCC Rcd 15,499, ¶¶ 1062-1063 (1996).

59. Thus, in addition to the obligations set forth in the Interconnection Agreements, Verizon is obligated, pursuant to Section 251 of the Act and the FCC's regulations and orders implementing the Act, to compensate XO for the interconnection transmission facilities established by XO and/or its predecessors-in-interest and used by Verizon to deliver traffic to the network of XO and/or its predecessors-in-interest for the purpose of transport and termination.

60. Despite XO's repeated and proper demands, Verizon has wrongfully refused, and continues to wrongfully refuse, to pay the amounts billed by and due to XO for Verizon's use of these interconnection

transmissionfacilities in violation of Section 251(c)(2) of the Act, 47 C.F.R. § 51.709(b), and the First Report and Order in CC Docket No. 96-98.

61. As a proximate result of Verizon's violation of Section 251of the Act, 47 C.F.R. § 51.709(b), and the FCC's First Report and Order in CC Docket No. 96-98, XO has suffered damages.

## COUNT FOUR

### (Unjust Enrichment/*Quantum Meruit*)

62. XO incorporates herein by reference each and every allegation contained in paragraphs 1 through 61 of the Complaint as though set forth again in full.

63. Verizon used, and continues to use, the interconnection transmission facilities provided by XO and/or its predecessors-in-interest to deliver traffic to the network of XO and/or its predecessors-in-interest for purposes of transport and termination.

64. Verizon received payment from its customers for the completion of these calls.

65. By providing the interconnection transmission facilities for the delivery of this traffic to the networks of XO and/or its predecessors-in-interest, XO and/or its predecessors-in-interest have conferred benefits, and

-17-

continue to confer benefits, on Verizon for which XO and its predecessors-in-interest reasonably expected to be paid by Verizon.

66. Verizon accepted, and continues to accept, these benefits. Verizon, however, has wrongfully refused, and wrongfully continues to refuse, to compensate XO for such benefits.

67. Verizon has been, and continues to be, unjustly enriched by its unlawful conduct at the expense of XO and/or its predecessors-in-interest.

68. Permitting Verizon to retain the fruits of its wrongful conduct would be inequitable.

## COUNT FIVE
### (Declaratory Judgment)

69. XO incorporates herein by reference each and every allegation contained in paragraphs 1 through 68 of the Complaint as though set forth again in full.

70. An actual and justiciable controversy exists between XO and Verizon as to Verizon's obligations to pay to XO certain amounts due and owing.

71. Verizon has refused, and continues to refuse, to fulfill its obligations to XO.

72. By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights of the parties.

WHEREFORE, plaintiffs XO Communications, LLC and XO Communications Services, Inc. request that the Court:

(a) award to them damages against Verizon New Jersey Inc., Verizon Pennsylvania Inc., Verizon Maryland Inc., and/or Verizon Washington, D.C. Inc. in an amount to be determined at trial;

(b) award to them an accounting and disgorgement of Verizon New Jersey Inc.'s, Verizon Pennsylvania Inc.'s, Verizon Maryland Inc.'s, and/or Verizon Washington, D.C. Inc.'s profits resulting from their wrongful conduct;

(c) issue a declaratory judgment that under the XO Interconnection Agreements and/or the Allegiance Interconnection Agreements, Verizon New Jersey Inc., Verizon Pennsylvania Inc., Verizon Maryland Inc., and/or Verizon Washington, D.C. Inc. are contractually obligated to compensate Plaintiffs for the portion of interconnection transmission facilities established between the parties' networks by XO and/or its predecessors-in-interest that Verizon New Jersey Inc., Verizon Pennsylvania Inc., Verizon Maryland Inc., and/or Verizon Washington, D.C. Inc. use to deliver traffic to the network of XO for termination; and

(d) award pre-judgment and post-judgment interest;

(e) award costs of suit, including without limitation its attorneys' fees actually incurred and other costs; and

grant such other and further relief as the Court deems just and proper.

Dated: February 16, 2007

KELLEY DRYE & WARREN LLP

By: *[signature]*
Joseph A. Boyle (JB 5036)
Lauri A. Mazzuchetti (LM 8035)
200 Kimball Drive
Parsippany, NJ 07054
(973) 503-5900

Attorneys for Plaintiffs XO
Communications, LLC and
XO Communications Services, Inc.